James **OLTMAN**, Plaintiff-Appellant,

v.

Walter **MILLER**, Walter S. Feldman, James Bennett and Henry G. Marlow, Defendants-Appellees.

No. 16797.

United States Court of Appeals Seventh Circuit.

Feb. 11, 1969.

Kenneth D. Reed, Richard P. Komyatte, Owen W. Crumpacker, Hammond, Ind., Robert W. Macdonald, Chicago, Ill., Crumpacker & Abrahamson, Hammond, Ind., for appellant.

Thomas D. Allen, Jon R. Waltz, Chicago, Ill., for appellees, Walter Miller and Walter S. Feldman, Wildman, Harrold, Allen & Dixon, Chicago, Ill., of counsel.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff Oltman filed suit under 42 U.S.C. § 1983 charging defendants with a conspiracy to deprive him of his civil rights. The District Judge directed a verdict in favor of defendant, Dr. Miller, at the close of the plaintiff's evidence and the jury found in favor of the other defendants. Plaintiff appeals.

Plaintiff and his wife were having marital problems and were referred by their pastor and by co-defendant Dr. Miller, the family physician, to the defendant, Dr. Feldman, a psychiatrist. Dr. Feldman had four or five consultations with the Oltmans and suggested that the plaintiff needed extensive hospitalization because of homicidal tendencies. Dr. Feldman advised Mrs. Oltman that she had two choices: she could go through the process of a state commitment or could privately hospitalize her husband. Dr. Feldman never suggested any means of bringing Oltman, who was equivocal about the matter, to the hospital.

On November 6, 1964, Mrs. Oltman made arrangements for her husband's admittance to Our Lady of Mercy Hospital in Dyer, Indiana. No room in the hospital had been reserved until Mrs. Oltman got there.

On the evening of November 6, 1964, plaintiff and two bowling companions stopped at a neighborhood tavern-restaurant in Crete, Illinois. After a sandwich and a couple of glasses of beer, they left through the back door of the tavern. It was approximately eleven o'clock in the evening. Plaintiff had parked his car in a parking lot in the rear of the tavern. Defendants Bennett and Marlow, dressed in civilian clothes, were waiting outside for Oltman to emerge from the tavern. Plaintiff, who was a part-time police officer in Crete, knew Bennett as the local chief of police. Marlow was a police officer in the department.

As plaintiff started to open his car door, the officers approached him from the rear. Bennett informed Oltman that they had to take him to Dyer, Indiana, for a physical checkup. Oltman asked if the whole thing was "a joke" and was informed that it was not—that Dr. Walter Miller had given orders to take him to Dyer.

Oltman sat in the back seat of the car, with officer Marlow on one side and Harry Roush, one of the bowling companions, on the other. Chief Bennett drove the car to Our Lady of Mercy Hospital. As they drove on to the hospital grounds, Oltman observed a gray Buick similar to one owned by Dr. Miller.

After arriving at the main entrance, the officers and Oltman entered the hospital and Bennett identified Oltman to the nurse at the admitting desk. She then led plaintiff to a corridor with a locked door. She unlocked the door and led him to a room in the locked section of the hospital.

The only doctor that he saw in the hospital during his stay was defendant Feldman, with the one exception of a physical examination by another doctor. At their first meeting, Oltman requested to be released, but was informed by Feldman that he would be in the hospital for a long time.

For the first two weeks, Oltman had no privileges whatsoever, not being permitted to leave the locked section. He then was permitted to go to certain sections of the hospital, but only in the company of nurses or ward boys. The first time he had access to a telephone, he telephoned an attorney, Andrew Kozacik.

On December 9, 1964, attorney Kozacik filed a petition for a writ of habeas corpus in the Lake County Superior Court, sitting in Hammond, Indiana. On December 11, plaintiff was taken to Hammond for a court hearing on the

writ and was released by order of the Lake County Superior Court.

■ ■ Plaintiff does not attack the sufficiency of the evidence but rather contends that the Trial Judge erred in failing to admit hearsay declarations of defendant Bennett against defendants Miller and Feldman.[1] The problem of the admissibility of hearsay evidence is one of reliability. 5 Wigmore on Evidence § 1362 (3rd Ed. 1940). Since the speaker cannot be cross-examined to find out the true purport of his words, courts have held his statements inadmissible. An exception has been carved out for admissions, statements that are against the interests of the speaker, because they have a higher degree of reliability. While admissions of a conspirator outside the presence of his co-conspirators would be admissible to show the character and nature of the conspiracy, they would not be reliable in proving the existence of the conspiracy itself, assuming the words are not the verbal acts of agreement. Unless we are able to cross-examine the speaker as to the true meaning of his words, we cannot use these words to prove a conspiracy involving other individuals. As the Supreme Court said in Glasser v. United States, 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), "[S]uch declarations are admissible over the objection of an alleged co-conspirator, who was not present when they were made, only if there is proof *aliunde* that he is connected with the conspiracy. * * Otherwise hearsay would lift itself by its own bootstraps to the level of competent evidence." In United States v. Hickey, 360 F.2d 127, 140 (7th Cir. 1966), this Court held that a conspiracy must be proved *prima facie* before such evidence would be admissible against all conspirators. As stated in United States v. Bentvena, 319 F.2d 916, 949 (2d Cir. 1963): "[I]t is equally clear that there must be independent evidence establishing a defendant's participation in the conspiracy before such declarations are admissible against him. * * * Such independent proof must be substantial and not 'too slight.' "

■ Conspiracy requires agreement among the parties. This agreement is not necessarily an express one but rather may usually be inferred from the acts of the parties. United States v. Varelli, 7th Cir. (407 F.2d 735, Feb. 11, 1969). Here, we find no evidence of an agreement between Bennett, Marlow, Miller and Feldman. While Bennett and Marlow did not know Feldman, it is plaintiff's theory that Dr. Miller was the go-between. We find no evidence to support such a theory. Plaintiff has failed to prove the *prima facie* existence of a conspiracy and, therefore, the ad-

---

[1]. James Bennett in his deposition testified as follows:

"* * * I told him his wife wanted him to go over to the hospital——I don't know, but I believe I did mention Mt. Mercy——and Dr. Feldman and Dr. Miller——that they felt this would be the best for him. * * *"

Defendants Miller and Feldman objected to the reception of this statement against them and the trial court limited its receipt to the defendant Bennett.

Plaintiff offered his own version of Bennett's remarks:

"* * * I said, What do you want, Jim [Bennett]. He said, We have to take you for a physical checkup over at Dyer, Indiana. I said, Is this some kind of a joke? He said, No, it's no joke. Dr. Miller gave us orders to take you over to Dyer."

Defendant Miller objected on grounds of hearsay and the trial judge let the quoted statement in as against defendants Bennett and Marlow only.

Plaintiff also sought, through witness Harry Roush, to introduce a third version of defendant Bennett's remarks. When a defense objection was sustained, plaintiff's counsel made an offer of proof in pertinent part as follows:

"* * * Plaintiff would offer to prove as follows: That if the witness, Harry Roush, were permitted to answer * * * he would testify that he heard the defendant James Bennett say to the plaintiff James Oltman that, 'Reverend Bekmeier and Dr. Miller and I believe Dr. Feldman have asked me to take you to Mt. Mercy for an examination.' "

missions of Bennett are inadmissible against the other defendants.

Plaintiff next contends that the District Judge erred in failing to submit various instructions of the plaintiff to the jury. Plaintiff's theory was adequately covered in the instructions given to the jury, and we find no error in the District Court's rejection of the proposed instructions.

We have considered the other errors suggested by plaintiff and find them to be lacking in merit.

The judgment of the District Court is affirmed.

Affirmed.