**UNITED STATES of America,
Appellee,**

v.

**Jerome Burton SCHROEDER, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Anthony August MOSSER, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Warren James ALLEN, Appellant.**

**Nos. 20056, 20057, 20064.**

United States Court of Appeals,
Eighth Circuit.

Oct. 7, 1970.

Certiorari Denied Jan. 25, 1971.
See 91 S.Ct. 590.

Wallace A. Thompson, Winnebago, Minn., for appellant Schroeder.

Warren E. Peterson, St. Paul, Minn., for appellant Mosser.

Raymond W. Faricy, Jr., St. Paul, Minn., for appellant Allen.

Neal J. Shapiro, Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., on the brief.

Before JOHNSEN, Senior Circuit Judge, and VAN OOSTERHOUT and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

On December 13, 1968, the First National Bank of Good Thunder, Minnesota,

was robbed of $6,436. Defendants Allen, Mosser, Schroeder and Ewert were charged in this offense with bank robbery and assault in violation of 18 U.S.C. § 2113(a) and (b). Each was found guilty in a jury trial in the Federal District Court for the District of Minnesota. Defendants Allen, Mosser and Schroeder appeal their convictions to this Court. We affirm.

We discuss the contentions of the defendants seriatim.

I

Defendants Allen, Mosser and Schroeder contend that, in light of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the District Court erred in permitting testimony about a conversation a witness had with two of the defendants, and that a subsequent instruction to disregard the testimony did not cure the error.

The government called David Haugh as a witness. He testified that he was at the home of Mosser's father about three months after the robbery occurred; that Mosser and Schroeder were with him; that all three men drank a good deal of beer and that he became intoxicated; that while in this condition, Mosser and Schroeder discussed the robbery. Haugh was asked repeatedly if he could remember what was said and who said it. He replied he could not. He was nevertheless permitted to state, over objection, "Well, they said they just generally robbed Good Thunder Bank." At this point, the defendants objected so strenuously that the jury was withdrawn and Haugh was questioned further. The examination confirmed what was earlier apparent, that Haugh could not recall any specific statements by Mosser or Schroeder.

At this point, the government withdrew Haugh as a witness, and the court,

on the defendants' request, instructed the jury:

"* * * [Y]ou are instructed to disregard any testimony that was given by Mr. Haugh concerning an alleged conversation between Haugh and any of the defendants. Just completely disregard it."

■ Defendant Allen was not prejudiced by Haugh's testimony since Haugh did not mention Allen or allude to him. Therefore, as to him, there was no error in permitting Haugh's testimony.

■ It was error, however, to permit the testimony with respect to Mosser and Schroeder. Not only did Haugh concede that he was intoxicated when the alleged conversation took place, but it was obvious, moments before the challenged testimony was given, that Haugh had no recollection as to who had made the incriminating statement. Under these circumstances, the lack of foundation was clear. But we cannot agree that the error was prejudicial.

■ If a proper foundation had been laid, Haugh's testimony regarding the statements by the defendants would have been admissible against the defendant making the statement as an admission against interest, and as an adoptive admission against the other defendant if he were shown to be present. See, Arpan v. United States, 260 F.2d 649, 655 (8th Cir. 1958). Such admissions are not excludible under Bruton. Campbell v. United States, 415 F.2d 356 (6th Cir. 1969).[1]

Furthermore, Haugh's testimony was weak because of his obvious inability to recall the situation about which he testified. His testimony was, therefore, not significantly incriminating. The weakness of Haugh's testimony, combined with the court's order to strike the testi-

1. Other cases suggesting that Bruton may be inapplicable to statements admissible against a defendant under the rules of evidence are United States v. Branker, 418 F.2d 378 (2nd Cir. 1969) ; United States v. Spencer, 415 F.2d 1301 (7th Cir. 1969) ; United States v. Lawler,

413 F.2d 622 (7th Cir. 1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 698, 24 L. Ed.2d 691 (1970) ; Migliore v. United States, 409 F.2d 786 (5th Cir.), cert. denied, 396 U.S. 975, 90 S.Ct. 449, 24 L. Ed.2d 444 (1969).

mony and his instruction to the jury to disregard it as to all defendants, rendered any error harmless. See, United States v. Lipowitz, 401 F.2d 591 (3rd Cir. 1968), cert. denied, *sub nom* Muller v. United States, 395 U.S. 924, 89 S.Ct. 1778, 23 L.Ed.2d 240 (1969).

## II

Defendant Schroeder contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt.[2] We cannot agree.

At the outset, we note that we are required to view the evidence and the reasonable inferences therefrom in the light most favorable to the government. Kirschbaum v. United States, 407 F.2d 562 (8th Cir. 1969); Moore v. United States, 375 F.2d 877 (8th Cir.), cert. denied, 389 U.S. 844, 88 S.Ct. 92, 19 L. Ed.2d 110 (1967); Coon v. United States, 360 F.2d 550 (8th Cir.), cert. denied, 385 U.S. 873, 87 S.Ct. 145, 17 L.Ed. 2d 100 (1966).

The evidence establishes that the First National Bank of Good Thunder was robbed just before 10:00 A.M. on December 13, 1968. Two or three masked robbers were observed in the Bank, and three or four masked robbers were seen driving from the Bank. None of the witnesses inside or outside of the bank identified the robbers.

The government established the identity of the defendants through the testimony of Clifford Lindholm, an acquaintance of the defendants. He testified to conversations with the defendants before and after the robbery. These conversations clearly implicated the defendant Schroeder. Lindholm testified that:

1. He participated in a conversation at Mosser's home on December 8, 1968, with Allen, Mosser and Schroeder. Allen asked Mosser and Schroeder if they wanted to rob a bank. Each replied that he did.

2. He had a second conversation with Allen and Mosser on December 12, 1968, at Mosser's house. Allen identified the bank to be robbed as the First National Bank of Good Thunder and the car to be used as a 1967 or 1968 Mercury station wagon. Mosser stated that he had been in the Good Thunder Bank that afternoon and that it had two vaults. Mosser displayed a map of the bank.

We note that Schroeder was not present at the second conversation. Lindholm's testimony was admissible against him, however, under the rule that once a conspiracy has been established,[3] an incriminating extrajudicial statement made by one defendant is admissible in evidence against his codefendants if made while the conspiracy is pending and in furtherance of its objective regardless of the presence or authorization of the codefendants, and regardless of whether a conspiracy has been charged. Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Hanger v. United States, 398 F.2d 91 (8th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969). See, Annot. 1 L.Ed.2d 1780 (1956).

Lindholm also testified that he had a conversation with Schroeder and the other three defendants on the afternoon of December 13, 1968, subsequent to the bank robbery. He testified that the following statements were made:

1. Allen stated that the four defendants had robbed the bank, that the rob-

---

2. Mosser alleges that the government's case was weak, but he does not contend on appeal that the evidence was insufficient to sustain his conviction.

3. The evidence taken as a whole was sufficient to establish a conspiracy. Frohwerk v. United States, 249 U.S. 204, 39 S.Ct. 249, 63 L.Ed. 561 (1919); Bruce v. United States, 126 U.S.App.D.C. 336,

379 F.2d 113 (1967). An agreement constituting a conspiracy may be inferred from the acts of the parties. Oltman v. Miller, 407 F.2d 376 (7th Cir. 1969). The order of admission of the evidence was within the discretion of the trial judge. National Wrestling Alliance v. Myers, 325 F.2d 768, 772, n. 4 (8th Cir. 1963).

bery went over pretty good, and that there was a telephone call during the robbery for a woman employee.

2.  Schroeder stated that he stood by the door in the bank to watch for customers.

3.  Mosser stated that he drove the automobile used in the robbery.

█ While much of this testimony was hearsay, it was admissible under the exceptions to the hearsay rule. Schroeder's own statements were admissible against him as admissions against interest. The statements of the others were admissible against him as adoptive admissions. The evidence is clear that Schroeder was present at the conversation and that he participated in it. He neither denied nor objected to the statements of his codefendants. Under these circumstances, his silence was properly viewed as acquiescence in the truth of the statements, particularly since the statements were made in the presence of a third person who was not an accomplice in the robbery. See, Campbell v. United States, 269 F.2d 688 (1st Cir. 1959), vacated on other grounds, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961); Arpan v. United States, *supra;* IV Wigmore on Evidence § 1071 (3rd Ed. 1940).[4]

Schroeder contends that Lindholm's testimony was contradictory and unbelievable and that parts of it were contradicted by an alibi witness. The question of who to believe, however, is for the jury. Here, where Lindholm was witness to an incriminating statement made after the robbery and where his testimony regarding the robbery was specific, there was sufficient evidence from which the jury could find Schroeder guilty.

Furthermore, Lindholm's testimony was corroborated by other witnesses.

Three witnesses stated that they saw two robbers, that a third man stood watch by the door, and that the wrists of the victims had been taped. One witness testified that she had observed a dark colored station wagon outside the bank on the morning of the robbery, and another witness stated that he observed a dark 1966 or 1967 station wagon travel from the location of the bank to a point in Blue Earth County, near Wells. Other witnesses testified that the phone rang during the robbery, and that a man answered it. All of this testimony corroborated Lindholm's, and imparted to it sufficient weight to sustain Schroeder's conviction.

### III

Defendants Allen and Schroeder contend that the District Court erred in denying their pretrial motions for severance. Schroeder contends that, in a separate trial, Lindholm's testimony would have been inadmissible against him, and Allen contends that Haugh's testimony would have been inadmissible against him.

█ With regard to Schroeder's claim, we have already found Lindholm's testimony regarding Schroeder's involvement to be admissible as an admission against interest and as an adoptive admission. The remainder of Lindholm's testimony was found to be admissible against Schroeder under the co-conspirator exception to the hearsay rule. It is not necessary that the conspirators be tried jointly in order for the statements of one conspirator to be admissible against another. United States v. Marchisio, 344 F.2d 653 (2nd Cir. 1965); United States v. Sapperstein, 312 F.2d 694 (4th Cir. 1963); United States v. Dioguardi, 20 F.R.D. 10 (S.D.N.Y.1956)

With regard to Allen's claim, we have already noted that Haugh's testimony did

4.  For circumstances in which the defendant has no duty to deny or contradict the incriminating statement made in his presence, compare United States v. Mullings, 364 F.2d 173 (2nd Cir. 1966); Arpan

v. United States, 260 F.2d 649 (8th Cir. 1958); Sandez v. United States, 239 F. 2d 239 (9th Cir. 1956); Skiskowski v. United States, 81 U.S.App.D.C. 274, 158 F.2d 177 (1946).

not implicate him in any way. He cannot, therefore, claim that Haugh's testimony prejudiced him.

■■ Severance is a matter of discretion with the District Court, and its denial is not subject to reversal unless clear prejudice is shown. Caton v. United States, 407 F.2d 367 (8th Cir. 1969); Johnson v. United States, 356 F.2d 680, 682 (8th Cir.), cert. denied, 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966). The District Court did not abuse its discretion here.

## IV

Defendant Schroeder contends that the District Court erred in instructing the jury, over his objection, that it might draw no inference from a defendant's failure to testify.[5] We cannot agree.

■ We have made clear that, in a joint trial, the court must instruct the jury on a defendant's failure to testify where such an instruction is requested by one defendant even though other defendants object. Caton v. United States, supra.[6]

Here, defendant Ewert requested that the instruction be given. Schroeder objected on the grounds that such an instruction would prejudice him. These facts are no different from those in Caton. Schroeder's contention, therefore, must be rejected.

## V

Schroeder contends that the verdict against him was not unanimous. This contention is without merit.

Shortly after the trial, a juror signed an affidavit stating that he felt Schroeder to be not guilty and that he voted for conviction against his will. The record, however, makes clear that the same juror answered in the affirmative when polled as to his guilty verdict on Schroeder.

■ The general rule is that jurors may not impeach their verdict. Stein v. New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953);[7] Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); Butler v. United States, 317 F.2d 249, 262 (8th Cir.), cert. denied, 375 U.S. 836, 84 S.Ct. 67, 11 L.Ed.2d 65 (1963). After a jury has given its verdict, has been polled in open court and has been discharged, an individual juror's change of mind or claim that he was mistaken or unwilling in his assent to the verdict comes too late.[8] Under the circumstances of this case, the verdict must stand unimpeached.

## VI

Defendant Allen contends that he was denied effective assistance of counsel by the District Court's refusal to grant a continuance when his court-appointed counsel failed to appear and when substituted counsel did not have an opportunity to discuss the case with Allen prior to trial. We cannot agree.

Andrew W. Danielson was appointed on April 1, 1969, to represent defendant Allen. In the five and one-half months prior to trial, Danielson entered various appearances on behalf of Allen: he represented Allen before the United

---

5. Mosser also objected at trial but he does not raise this contention on appeal.

6. See also, Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939); United States v. Kelly, 349 F.2d 720, 768–769 (2nd Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966).

7. Stein v. New York, 346 U.S. 156, 73 S. Ct. 1077, 97 L.Ed. 1522 (1953), was overruled on different grounds in Jack-

son v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

8. See, United States v. Chereton, 309 F. 2d 197 (6th Cir. 1962); United States v. Crosby, 294 F.2d 928 (2nd Cir. 1961), cert. denied, sub nom. Mittelman v. United States, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962); Klines v. United States, 263 F.2d 273 (D.C.Cir. 1969); Medina v. United States, 254 F.2d 228 (9th Cir.), cert. denied, 358 U.S. 846, 79 S.Ct. 72, 3 L.Ed.2d 80 (1958).

States Commissioner and he represented Allen at his arraignment and plea; he filed a motion for severance on the grounds that statements made by the co-defendants would be inadmissible against Allen at trial; he filed a motion for a bill of particulars disclosing the names and addresses of witnesses who would be called by the government; and he filed several other motions. Danielson also commissioned an investigating agency to look into the background of Clifford Lindholm, the government's primary witness. Danielson, however, was unable to appear at the trial, and thus he substituted an associate, Robert Hennessey, to represent Allen.

The record does not reveal when Hennessey learned he would be representing Allen. We infer, however, that it was just prior to trial since the record discloses that Hennessey requested a continuance at the beginning of trial, stated that he had spent time the previous night working on *voir dire*, and asked for a recess after the direct examination of the crucial witness, Clifford Lindholm, because he hadn't yet talked to Danielson.

This Court has held that there is a presumption of competency of court-appointed counsel, Slawek v. United States, 413 F.2d 957, 959 (8th Cir. 1969); Kress v. United States, 411 F.2d 16, 22 (8th Cir. 1969), and that the adequacy of counsel cannot be determined solely on the basis of the amount of time he spent with his client, Kress v. United States, *supra.*[9]

We have examined the record and find that Hennessey effectively represented his client: he competently cross-examined the government's witnesses; he presented three witnesses on behalf of his client; he properly objected to evidence which he deemed inadmissible; and he showed himself to be intimately familiar with the law applicable to the case. Moreover, we note that this

is not a case in which a defendant received his initial representation on the day of trial. As noted above, Allen was represented at various stages of the case by Danielson.

Allen argues, however, that we should adopt the rule applied by the Third and Fourth Circuits placing on the prosecution the burden of showing that the defendant was not prejudiced by belated appointment of counsel, United States v. Rundle, 394 F.2d 748 (3rd Cir. 1968); Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967); Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967).

We decline to adopt that rule here but note that the Fourth Circuit stated:

"* * * [W]here the record contains adequate *affirmative* proof that the defendant was not prejudiced despite the lack of time for preparation, we will not find a denial of effective representation." (Emphasis included.)

Field v. Peyton, *supra*, 375 F.2d at 626. Moreover, we note that in United States v. Rundle, *supra* 394 F.2d at 753, the Third Circuit found that the facts did not present an "* * * unrebutted prima facie denial of appellant's right to the effective assistance of counsel * * *." Consequently, the Court held it unnecessary for the government to rebut the presumption of prejudice due to late appointment of counsel.

Upon examination of the record here, we find sufficient affirmative proof that Allen was effectively represented.

## VII

Finally, defendant Schroeder contends that the District Court erred in omitting the word "shotgun" when it read the indictment to the jury. Again, we cannot agree.

The indictment, which had been returned by the Grand Jury, charged the

9. See also, United States v. Valdez, 418 F.2d 363 (5th Cir. 1969); Stamps v. United States, 387 F.2d 993 (8th Cir. 1967).

defendants with using "dangerous weapons; that is, two handguns and a sawed-off shotgun" in committing the robbery. Prior to the impaneling of the jury, the Assistant United States Attorney advised the court that the government would not prove that a shotgun was used and suggested that it might be prejudicial to read that. In reading the indictment to the prospective jurors before *voir dire*, the court stated that the defendants were alleged to have used "dangerous weapons." The court's instructions summarized the indictment stating that the defendants were charged with using "dangerous weapons, that is, guns." No objections were raised at any time by any of the defendants with regard to the reading of the indictment.

It is well established under Fed.R.Crim.P., Rule 51, that where an alleged error is not properly raised in the District Court, the alleged error cannot be reviewed for the first time on appeal, absent a plain error situation. Petschl v. United States, 369 F.2d 769, 773 (8th Cir. 1966).[10] Generally, an improper reading of an indictment is not plain error under Fed.R.Crim.P., Rule 52(b). Whitehorn v. United States, 380 F.2d 909, 913 (8th Cir. 1967); Blauner v. United States, 293 F.2d 723, 736–737 (8th Cir.) cert. denied, 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961).[11] Here, the reading of the indictment does not constitute plain error. The jury was properly instructed that an indictment does not constitute evidence against a defendant.

The judgment of the District Court is affirmed.

---

10. See also, Tanner v. United States, 401 F.2d 281 (8th Cir. 1968), cert. denied, 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969); Hansen v. United States, 393 F.2d 763 (8th Cir.), cert. denied, 393 U.S. 833, 89 S.Ct. 103, 21 L.Ed.2d 103 (1968); Wood v. United States, 361 F.2d 802 (8th Cir.), cert. denied, 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439 (1966); Birnbaum v. United States, 356 F.2d 856 (8th Cir. 1966); McNeely v. United States, 353 F.2d 913 (8th Cir. 1965); Robinson v. United States, 327 F.2d 618 (8th Cir. 1964); Gajewski v. United States, 321 F.2d 261 (8th Cir. 1963), cert. denied, 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964).

11. See also, United States v. Gorman, 355 F.2d 151 (2nd Cir. 1965), cert. denied, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966).