UNITED STATES of America,
Appellee,

v.

Curtis Charles OVERSHON and
John Overshon, Appellant.

Nos. 73–1810 and 73–1811.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1974.

Decided April 10, 1974.

Rehearing and Rehearing En Banc
Denied in No. 73–1810
April 30, 1974.

Charles L. Merz, and Burton C. Bernard, St. Louis, Mo., for appellants.

Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT and MATTHES, Senior Circuit Judges, and LAY, Circuit Judge.

MATTHES, Senior Circuit Judge.

Appellants, John Overshon and Curtis Charles Overshon, who are brothers, and five other persons, were named as defendants in a thirteen-count indictment filed in the United States District Court for the Eastern District of Missouri.[1] Eleven of the thirteen counts alleged the commission of substantive offenses by one or more of the defendants. Relevant here is Count 3, which charged that appellant Curtis Charles Overshon, having previously been convicted of a felony, did knowingly receive, possess and transport in commerce a firearm in violation of 18 U.S.C. App. § 1202(a)(1).

Count 12 charged that defendants Sharp, Hodges, John Overshon and Curtis Charles Overshon entered into a conspiracy with diverse other persons unknown to the grand jury to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. §§ 371 and 922(a)(1). Twenty-four overt acts were allegedly committed in furtherance of the conspiracy. Count 13 also alleged a conspiracy, but since appellants were not named as conspirators in that count, we forego further discussion of the allegations of Count 13.

All of the charged parties except appellants pleaded guilty to at least one of the charges. All other charges against those pleading guilty were dismissed. Marvin Sharp, who the evidence demonstrates played a dominant role in overt acts forming the basis of the conspiracy, pleaded guilty to engaging in the business of dealing in explosive materials without a license in violation of 18 U.S. C. § 842(a)(1).

Appellants were tried jointly but were represented by different court-appointed counsel. Both were convicted on the conspiracy charge, and Curtis was found guilty of the substantive offense of receiving and possessing a firearm. These appeals are from the judgments of conviction.

The crucial issue for consideration is the sufficiency of the evidence to support the verdicts of the jury and the judgments entered thereon. Curtis mounts several attacks against the substantive charge and he joins with John in challenging the conviction under the conspiracy count. For reasons stated below, we affirm the conspiracy conviction of both appellants and reverse the substantive conviction of Curtis.

Preliminarily, and in view of the arguments urged upon us in support of the claim that the conspiracy convictions cannot stand, we review the principles which have been enunciated by the courts as guidelines in resolving whether the evidence is of sufficient quantity and quality to support a conviction under the conspiracy statute, 18 U.S.C. § 371.

Of course, the government carries the burden at trial of proving the existence of the conspiracy alleged. But the existence of a criminal conspiracy or a defendant's participation in that scheme need not be proven by direct evidence. "A fraudulent scheme  .  .  .

---

1. The other defendants were Marvin Sharp, Betty Hodges, Jesse Hussey, Pamela Campbell and Rodney Lewis.

may be and usually is established by circumstantial evidence; by inferences from the evidence of relationship of the parties and by overt acts, conduct and other probative circumstances." Isaacs v. United States, 301 F.2d 706 (8th Cir.), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962). *See also* Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Langel v. United States, 451 F.2d 957 (8th Cir. 1971); United States v. Hanon, 428 F. 2d 101 (8th Cir. 1970), cert. denied, 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (1971); Jacobs v. United States, 395 F. 2d 469 (8th Cir. 1968); Cave v. United States, 390 F.2d 58 (8th Cir.), cert. denied, 392 U.S. 906, 88 S.Ct. 2059, 20 L. Ed.2d 1365 (1968).

■ Moreover, once the government has established the existence of a conspiracy, even slight evidence connecting a particular defendant to the conspiracy may be substantial and therefore sufficient proof of the defendant's involvement in the scheme. United States v. Hutchinson, 488 F.2d 484 (8th Cir. 1973); Langel v. United States, *supra*; United States v. Warner, 441 F.2d 821 (5th Cir. 1971); Cave v. United States, *supra*; Isaacs v. United States, *supra*; Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962). *See also* United States v. Henderson, 446 F.2d 960 (8th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

■■ If a defendant's participation in a conspiracy has been established, then the defendant is culpable for everything said, written or done by any of the other conspirators in furtherance of the common purpose of the conspiracy. United States v. Guy, 456 F.2d 1157 (8th Cir.), cert. denied, 409 U.S. 896, 93 S.Ct. 136, 34 L.Ed.2d 153 (1972); United States v. Francisco, 410 F.2d 1283 (8th Cir. 1969); Wangrow v. United States, 399 F.2d 106 (8th Cir.), cert. denied, 393 U.S. 933, 89 S.Ct. 292, 21 L. Ed.2d 270 (1968); Nassif v. United States, 370 F.2d 147 (8th Cir. 1966); 16 Am.Jur.2d Conspiracy § 14 (1964). Even if the defendant joined the conspiracy subsequent to its original formation, he may be held responsible for acts committed by other conspirators in furtherance of the conspiracy before he joined it. United States v. Cimini, 427 F.2d 129 (6th Cir.), cert. denied, 400 U. S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); United States v. Cerrito, 413 F.2d 1270 (7th Cir. 1969), cert. denied, 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970); Nassif v. United States, *supra*; 16 Am.Jur.2d Conspiracy § 15 (1964).

Finally, we note the well-established rule that an appellate court considering the record in a criminal case on appeal from a jury verdict of guilty must view the evidence in the light most favorable to the verdict rendered. Likewise, the appeals court must accept as established all reasonable inferences from the evidence that tend to support the action of the jury. *See, e. g.*, United States v. Francisco, *supra*; Jacobs v. United States, *supra*; Cave v. United States, *supra*; Koolish v. United States, 340 F. 2d 513 (8th Cir.), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965); Thogmartin v. United States, 313 F.2d 589 (1963).

■ Mindful of appellants' main claim that there was a lack of proof of the conspiracy and of their participation therein if it in fact existed, we review the evidence in some detail.

In January, 1973, two special agents of the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury Department, Robert Beattie and Bruce Bennett, began undercover work in Phelps County, Missouri, particularly in and near Rolla, the county seat, to investigate federal criminal activity. The agents rented a trailer in the Crestview Trailer Court, a facility located approximately six miles south of Rolla and managed by the above-named Marvin Sharp, one of the conspirators.

The government agents, through association with Sharp, gained his confidence, and in late January he offered to sell Beattie and Bennett guns and other

items. This initial approach was followed on February 22, 1973, by a firm offer to the agents by Sharp in the presence of Betty Hodges, Lorraine Sharp (Marvin Sharp's wife), and John Overshon to sell them articles the group had obtained in a burglary.

Since Beattie and Bennett expressed interest, the entire group drove in three cars to a location on a secluded road several miles from the trailer park. There John Overshon and Marvin Sharp retrieved two guns from the car Overshon had been driving, and allowed the agents to inspect the firearms. Beattie negotiated with Marvin Sharp about the price of the guns and a television set, and the $125 agreed upon was tendered to Sharp in the presence of John Overshon. Both Sharp and Overshon stated to the agents that it had been a pleasure "doing business" with them. When Beattie and Bennett explained that they would be out of town for a few days, John Overshon responded: "Well, we'll probably have some more guns for you by the time you get back."

On March 13, 1973, the government agents met with Marvin Sharp, Betty Hodges, and the Overshon brothers. John Overshon introduced Beattie and Bennett to Curtis Overshon for the first time. John reassured his brother by explaining, "These boys are all right. I've done business with them before." Marvin Sharp advised the agents that Curtis and John were going to assist Sharp in obtaining seventeen guns for Beattie and Bennett, a deal which Sharp and the agents had discussed previously.

Two days later, on March 15, Beattie and Bennett again met Sharp and Hodges. Sharp stated that he had a "real load" of guns for the agents and noted that he would have to get a good price for the lot because there would be a four-way split of the proceeds. Sharp and Hodges then drove with the agents to the Overshon residence near Rolla. Passing by the Overshon home, Sharp wordlessly motioned to the Overshons from the car.

John and Curtis Overshon, occupying their own car, followed the auto containing Sharp, Hodges, and the agents to a shed in a wooded area outside Rolla. Everyone but Betty Hodges entered the shed. Inside, Sharp and Curtis Overshon uncovered a cache of eight firearms— five rifles, two shotguns, and a pistol, hidden underneath a sheet and debris in one corner of the shed. The guns were passed around and inspected by everyone.

Beattie and Sharp once again did the negotiating over price, and a sum of $545 was agreed upon between them. At that point Sharp turned to Curtis Overshon and asked, "Curt, this is our deal, does that sound all right to you?" To which Curtis replied, "Sure, that sounds good to me." At this point John Overshon abruptly left the shed to stand outside, and appeared to the agents to be agitated. When Beattie later inquired of Sharp about John Overshon's behavior, Sharp replied, "Oh, he didn't like the price. But he'll be all right once he gets his cut."

On March 19, the agents happened to meet John Overshon in a pool hall in Rolla, Missouri. In the course of a general conversation, Overshon stated that he had spent all the money he had received from the "last deal" in attempting to repair his automobile, but that he had about 100 guns spotted around the county for eventual sale to the agents. A similar proposal was extended to the agents a week later by John Overshon, when he revealed his intention to steal guns from a local Western Auto store. Before such a scheme was executed, all the defendants were arrested.

Appellants submit that the conspiracy conviction cannot be sustained because the government failed to prove that they engaged "in the business of * * * dealing in firearms" *without a license* as provided by 18 U.S.C. § 922(a)(1), and as charged in the indictment. 18 U.S.C. § 921(a)(11) defines a "dealer" as "any person engaged in the business of selling firearms or ammunition at wholesale or

retail * * *." Simply stated, appellants contend that the record is barren of probative evidence that they were personally engaged in the sales of firearms. They assert that the evidence conclusively shows that any and all sales were consummated solely by Marvin Sharp, that appellants were in reality innocent bystanders and did not in any manner participate in the sales of the weapons.[2] The government proved without contradiction that neither of the appellants had been licensed to deal in firearms, but the appellants argue that in order to prove a conspiracy to deal in firearms without a license it was incumbent upon the government to prove also that Marvin Sharp was unlicensed.[3]

This record dictates that we reject appellants' theory. The fatal weakness of this defense lies in a faulty factual premise which appellants have espoused in brief and oral argument; namely, that only Marvin Sharp was actively involved in the two sales to Beattie and Bennett. Quite to the contrary, as shown above, the evidence viewed in the light most favorable to the government provides adequate proof that appellants were not only partners in the conspiracy and thus bound by Sharp's actions, but they actively participated in the sales of the firearms to the government agents and received a part of the proceeds from the sales. To rehash the evidence would constitute an exercise in redundancy. It is sufficient to state in summary that there is substantial evidence from which the jury could reasonably conclude that the conspirators themselves did not consider Sharp to be the sole vendor of the firearms, although he was a key actor in the unlawful venture. Appellants were instrumental in the proscribed activities; indeed, the guns sold in the second transaction were concealed in a building apparently under the control of appellants.

Nevertheless, the Overshons urge that, even if the government proved a criminal conspiracy, it did so with inadmissible hearsay and the convictions should therefore be reversed. The appellants contend that the district court allowed Beattie and Bennett to testify over objection at trial to certain prejudicial hearsay statements by Marvin Sharp, out of the presence of the Overshons, which served to inculpate John and Curtis as principals in the conspiracy.[4]

The statements by Sharp about which the agents testified were indeed hearsay, but it is an accepted exception to the hearsay rule that out of court statements made by a conspirator can be admitted against both the declarant and his coconspirators if there is independent evidence of the conspiracy and if the statements were made during the pendency of the conspiracy in furtherance of the conspiracy itself. *See, e. g.,* United States v. Richardson, 477 F.2d 1280 (8th Cir. 1973); United States v.

---

2. An attempt was made through the testimony of Curtis and his wife to disprove appellants' knowledge of or participation in the conspiracy. John Overshon did not testify. Obviously the jury did not credit the Overshon testimony.

3. Although the government did not introduce evidence that Sharp was unlicensed, no one contended at trial or during oral argument that he actually did have a license. In fact, Sharp himself made a pre-trial motion to dismiss certain counts involving offenses under 18 U.S.C. § 922(a)(1) on the grounds that no license was required for the particular sales alleged. In addition, the government's attorney at trial stated flatly without contradiction during a bench conference that Marvin Sharp was unlicensed. Furthermore, Sharp pleaded guilty to a substantive violation of 18 U.S.C. § 842(a)(1), dealing in explosive materials without a license.

Of course, the jury had no knowledge of the pre-trial motion, Sharp's guilty plea, or the government attorney's statements to the judge.

4. The hearsay statements of Sharp to which the Overshons objected included: a statement that the group had some items for sale which they had acquired in a burglary; Sharp's remark on March 13 that John and Curtis would help obtain seventeen more firearms; and Sharp's explanation of John's anger after the $545 sale.

Schroeder, 433 F.2d 846 (8th Cir. 1970), cert. denied, 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971); McCormick's Handbook of the Law of Evidence § 267 (1972); IV Wigmore on Evidence § 1079 (Chadbourne ed. 1972).

Here there was substantial independent evidence of the conspiracy, as developed in the agents' testimony from their personal observations and the appellants' own conduct and admissions. Likewise, it is apparent that the hearsay statements by Sharp objected to by the appellants were made while the conspiracy was still active. The Overshons contend, however, that the hearsay statements were not in furtherance of the conspiracy, and therefore should not have been admitted.

Several commentators have noted that courts have tended to broadly construe the requirement that the co-conspirator's statement be made in furtherance of the conspiracy, so long as the hearsay statement sought to be admitted was uttered during the active life of the conspiracy under circumstances indicating reliability and provided the statement related to the conspiracy itself. McCormick's Handbook of the Law of Evidence § 267, at 645 (2d ed. 1972); Developments: Criminal Conspiracy, 72 Harv.L.Rev. 920, 985–986 (1959); cf., e. g., Salazar v. United States, 405 F.2d 74 (9th Cir. 1968); United States v. Annunziato, 293 F.2d 373 (2d Cir.), cert. denied, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961).

But in any event, we conclude that the statements uttered by Sharp clearly were in furtherance of the conspiracy. Several of his remarks implicating the Overshons were intended as solicitations for business from Beattie and Bennett. Sharp's explanation of John Overshon's reaction to the second sale evinced a desire to allay any apprehension Beattie and Bennett might have over John's conduct and to insure good relations for future sales of guns to the agents. There was no error in admitting the statements.

Finally, the appellants urge that the United States District Court for the Eastern District of Missouri was without venue to try either the conspiracy counts or the substantive count against Curtis. Appellants challenged the venue in their motions for judgment of acquittal. Rule 18, Fed.R.Crim.P., provides that, except as otherwise permitted by statute or the rules, the prosecution shall be had in the district in which the offense was committed. Thus, it follows that prosecution of the substantive count against Curtis must be in the district where the alleged receipt of the firearms took place.

The uncertainty of venue derives from the location of Rolla in the Eastern District of Missouri. This city is the seat of government of Phelps County,[5] which is the westernmost county in the Eastern District and is a relatively short distance from the eastern border of the Western District of Missouri. The evidence concerning the sales of the firearms shows that both transactions were at locations "approximately" several miles south of Rolla. The government made no attempt to pinpoint exactly where in Phelps County the substantive offense was committed. This deficiency in the proof was conceded by the Assistant United States Attorney who prosecuted the case in the district court and represented the government on appeal. Because of the lack of any evidence as to venue and considering that the place where the substantive offense occurred was near the borderline between the Eastern and Western Districts of Missouri, we have no alternative but to reverse the conviction against Curtis Overshon on the substantive count.[6]

---

5. 28 U.S.C. § 105(a) provides that Phelps County is within the Eastern Division of the Eastern District of Missouri.

6. Quite apart from the failure of the government to prove venue for the substantive offense, we have serious doubts as to whether

Nevertheless, appellants' contention that there was no evidence of venue for trial on the conspiracy in the Eastern District must fail. The applicable statute provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a). Accordingly, it is settled law that venue as to prosecution of all members of a conspiracy lies either in the jurisdiction in which the conspiratorial agreement was formed or in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators. Hyde v. United States, 225 U.S. 347, 72 S.Ct. 793, 56 L.Ed. 1114 (1912); United States v. Guy, 456 F.2d 1157 (8th Cir.), cert. denied, 409 U.S. 896, 93 S.Ct. 136, 34 L.Ed.2d 153 (1972); United States v. Phillips, 433 F.2d 1364 (8th Cir. 1970); 8 Moore on Fed.Prac. ¶ 18.03[1] (1968).

In the present case the proof shows several overt acts to sell firearms made to Beattie and Bennett by Sharp at the Crestview Trailer Court and similar overtures to the agents by John Overshon during pool hall conversations in Rolla. These overt acts are sufficient to establish venue of the conspiracy count in the Eastern District.

By way of summary, we are convinced that the evidence clearly established that appellants and their co-conspirators concocted a deliberate scheme for the purpose of engaging in illicit sales of large numbers of firearms. The evidence likewise shows that by concerted action they were able to accomplish the purpose of the conspiracy.

For the reasons stated, we affirm the judgments of conviction against both appellants on the conspiracy count and reverse the judgment of conviction against Curtis Charles Overshon on the substantive count.

---

the evidence of receipt of the weapon, which is the gist of the substantive offense, would be sufficient to sustain a conviction under 18 U.S.C. App. § 1202(a)(1).