**Joseph David THOMAS, Jr.,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 73–1883.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1974.

Decided Aug. 28, 1974.

---

George J. Parnham, Houston, Tex., for appellant.

Daniel E. Wherry, Asst. U. S. Atty., Omaha, Neb., for appellee.

Before BRIGHT, STEPHENSON, and WEBSTER, Circuit Judges.

BRIGHT, Circuit Judge.

Joseph David Thomas, Jr. appeals from his conviction for possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He presents the following arguments: (1) the trial judge [1] erred in refusing to grant a motion to dismiss on the grounds that Thomas was denied his due process rights to a speedy trial under the fifth and sixth amendments; (2) the trial court erroneously denied a motion to suppress the heroin seized from Thomas; and (3) the trial court committed error in admitting evidence related to Thomas' general character and reputation. We reject these contentions and affirm the judgment of conviction.

The facts disclose that at about 9:00 P.M. on November 15, 1972, federal law enforcement officers supported by local

---

[1]. The Honorable Albert C. Schatz, United States District Judge for the District of Nebraska.

police raided a drinking and gambling establishment in Omaha, Nebraska, known as the "Crap House." The purpose of the raid was to search the premises for narcotics under the authority of a "no-knock" search warrant issued by the late United States District Judge Richard Dier. Further, the officers intended to arrest any persons found on the premises against whom arrest warrants had been issued. Thomas was one of these individuals, having been previously indicted on a narcotics charge separate from this present prosecution. Law enforcement officers discovered Thomas playing cards in a room on the premises. He was arrested and searched. Arresting Officer Gary Boan of the Omaha Police Department found and seized three tinfoil packages from Thomas containing heroin. The next day a formal complaint was filed against Thomas charging him with possession of heroin with intent to distribute. Although Thomas requested a preliminary hearing, no such hearing was held since the complaint was dismissed on November 28, 1972. The same charge was later reinstated by a Grand Jury indictment returned on February 25, 1973.

On November 21, 1972, six days after Thomas' arrest, a woman named Sue Ronhovde gave a statement to Thomas' attorney claiming that the arresting officer, Boan, had stated to her prior to Thomas' arrest that he was planning to plant heroin on Thomas, and that he further stated, after the arrest, that he had in fact planted heroin on Thomas. Ms. Ronhovde recanted the next day and signed a second statement admitting that the previous statement was false. Ms. Ronhovde made this second statement to a federal agent in the presence of her own attorney.

Thomas' trial did not commence until September 6, 1973. Pending trial he had been released on bail until later convicted and incarcerated on a state charge on or about June 15, 1973.

We now turn to his contentions of error asserted on appeal.

I. *Right to a Speedy Trial.*

Thomas' first assertion that he had been denied his due process right to a speedy trial focuses upon the nature and effect of the delay rather than its length. He claims that the Government's initial dismissal served to deprive him of a preliminary hearing and thus denied him the opportunity to obtain the testimony of Ms. Ronhovde under oath. After the Government indicted him three months later, he claims that he could not adequately defend himself since Ms. Ronhovde's testimony was unavailable because she had disappeared. We disagree.

In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court observed that a defendant's constitutional right to a speedy trial can only be determined on an *ad hoc* balancing basis. Such factors as the length of the delay, the reason for the delay, the defendant's prompt assertion of his right to a speedy trial, and prejudice to the defendant are to be weighed by the court. In *Barker,* the Court ruled that even though the defendant was not brought to trial for murder until more than five years after he had been arrested, during which time the prosecution obtained numerous continuances, he was not denied his right to a speedy trial. The Court determined that this lengthy delay was counterbalanced by a lack of prejudice to the defendant, the fact that the defendant was free on bail for most of the time, and by the absence of any demand for a speedy trial. Here, the time between arrest and trial amounted to ten months. The Grand Jury which next convened following the arrest returned the indictment. The Government asked for no continuances and the defendant did not seek a speedier resolution of the prosecution. Additionally, the defendant posted bond on this charge although he was subsequently incarcerated on an unrelated state charge.

The appellant, however, stresses the alleged prejudice flowing from the

dismissal of the criminal complaint and the consequent loss of the opportunity to obtain Ms. Ronhovde's testimony at a preliminary hearing which he had demanded. This contention rests on unstable grounds for we have held that the defendant has no absolute right to the benefits of a preliminary hearing for the underlying purpose of such a hearing may be supplanted by a dismissal of the complaint, McDonnell v. United States, 457 F.2d 1049, 1051 (8th Cir. 1972), or a later Grand Jury indictment, Spinelli v. United States, 382 F.2d 871, 887 (8th Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Moreover, appellant's claim that he was prejudiced by the absence of Ms. Ronhovde seems highly speculative. We have examined Ms. Ronhavde's conflicting written statements. We think it unlikely that her testimony could have helped Thomas' defense. In her second (recanting) statement, she accused the defendant of "coaching" her to give a false statement to Thomas' attorney. If she were available at the trial and testified favorably for Thomas, the prosecution could cross-examine her on the recanting statements with devastating adverse effects to the defense. A missing witness whose testimony cannot help a defendant constitutes a flimsy basis on which to claim prejudice. *See* McDonnell, *supra*, 457 F.2d at 1051.

Accordingly, we hold this record demonstrates no error by the trial court in its rejection of the dismissal motions for alleged delay in the trial.

## II. *Search and Seizure.*

■ The record shows that Omaha police possessed an arrest warrant for Thomas at the time of the raid but that police did not enter the premises of the "Crap House" under authority of that warrant. Appellant, therefore, argues that since Thomas was arrested and searched within the "Crap House," any evidence seized from him must be suppressed unless the raiding policemen possessed lawful authority to enter the premises in question. Assuming, but not deciding, the validity of this contention, we have examined and find valid the authority granted to the police to make a no-knock entry on the premises under the authority of a valid warrant issued by the late Judge Dier.[2]

Appellant also attacks the hearsay statements underlying the affidavit for the search warrant executed by Patrick G. Ryan, a government special agent attached to the Drug Abuse Law Enforcement section of the Department of Justice. The relevant portions of the affidavit are reproduced in the margin.[3]

---

2. The warrant authorized a search "in the daytime or nighttime" and authorized the executing officers "to break and enter * * * without announcing your authority until after you have gained entrance."

Such a "no-knock" entry is authorized in a search warrant only under limited circumstances as enumerated under 21 U.S.C. § 879(b):

* * * if the judge or United States magistrate issuing the warrant (1) is satisfied that there is probable cause to believe that (A) the property sought may and, if such notice is given, will be easily and quickly destroyed or disposed of, or (B) the giving of such notice will immediately endanger the life or safety of the executing officer or another person, and (2) has included in the warrant a direction that the officer executing it shall not

be required to give such notice. Any officer acting under such warrant, shall, as soon as practicable after entering the premises, identify himself and give the reasons and authority for his entrance upon the premises.

3. That on or about 2:00 p. m. on November 12, 1972, a confidential informant related to the affiant that he observed numerous quantities of heroin and sales of heroin at a location known as the "Crap House", a two-story wood and brick frame building located at 2407 Lake, Omaha, Nebraska. The informant, who has proven to be reliable on at least a dozen occasions in the past, also indicated that he had purchased heroin from the proprietor of the "Crap House" on November 9, 1972, and on at least a dozen other occasions has either made purchases or has seen other parties

The affidavit contains hearsay gained by the agent from a proven reliable informant and from personal knowledge. In essence, the affidavit shows (from the reliable informant) the existence of ongoing drug traffic at the "Crap House" and knowledge gained personally by the agent that prior raids at this establishment with minimal notice have proved fruitless. We believe that in reading the affidavit in a "commonsense and realistic fashion," United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), it affords probable cause for the issuance of the warrant under standards announced in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), as amplified and explained in the succeeding cases of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

Thus, we hold that law enforcement officers lawfully gained entrance to the premises. Thomas was seen, arrested, and searched. That search, of course, was valid as an incident of his arrest.

### III. *Evidence*

 Appellant complains that testimony given by two prosecution witnesses was, in effect, testimony on defendant's bad character and inadmissible un-

der United States v. Crawford, 438 F.2d 441 (8th Cir. 1971). A Gloria Brewer testified that on frequent occasions between March 1972 and February 1973, she performed dope testing services for Thomas by "shoot[ing] or injecting dope into her body to test its strength by feeling of its effects." Police Officer Boan related that Thomas had stated to him in earlier casual conversation that he did not use heroin because of a diabetic condition.

This testimony became relevant on the precise issue of whether Thomas possessed the packets of heroin with the intent to distribute rather than for his own personal use. United States v. Crawford, *supra,* does not support appellant's claim. There we said that the receipt of the questioned evidence, testimony by witnesses of purchases of drugs from defendant at times other than as specified in the indictment was admissible "for the purpose of showing intent * * *." 438 F.2d at 447. Moreover, here, the record shows that witness-Brewer furnished adequate background information about the incidents to which she testified to overcome appellant's objection that the testimony should have been excluded as "vague and uncertain [in] character." United States v. Spica, 413 F.2d 129, 131 (8th Cir. 1969).

Accordingly, we affirm the conviction.

distribute heroin at the aforementioned premises. The "Crap House" is notorious for the trafficking in heroin and gambling throughout the drug community.

Affiant further states that the informant is positive from what he has observed and from the typical transactions that there are stashes of heroin at the aforementioned premises. Affiant also states that it will be necessary to break and enter the premises without announcing his authority until after he has gained admittance since

previous raids by the Omaha Police Department have sometimes proven to be fruitless when minimal notice has been given.

That the foregoing constitutes affiant's probable cause to believe that there is a concealed quantity of heroin at the premises of 2407 Lake, Omaha, Nebraska, and that he is positive that the heroin is at that location, in violation of the laws of the United States, to wit: Title 21, United States Code, Section 841(a)(1).