UNITED STATES of America,
Appellee,

v.

Martin L. BAUMGARTEN, Appellant.

UNITED STATES of America,
Appellee,

v.

Randolph E. GOULD, Appellant.

UNITED STATES of America,
Appellee,

v.

Richard L. STANLEY, Appellant.

Nos. 74–1493, 74–1494, 74–1507.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1975.

Decided May 1, 1975.

Rehearings and Rehearings En Banc
Denied May 23, 1975.

Certiorari Denied Oct. 6, 1975.

See 96 S.Ct. 152.

Robert G. Duncan, Kansas City, Mo. and Ronald J. Clark, Chicago, Ill., for appellants.

Robert Schneider, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before BRIGHT, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

These combined appeals are taken from the convictions[1] of appellants Baumgarten, Gould and Stanley for conspiracy and related substantive offenses arising out of a series of bombings in the Kansas City area in the spring and early summer of 1970. Essentially, appellants contend that they were denied a speedy trial in violation of their Fifth and Sixth Amendment rights, that the trial court erred in admitting into evidence a letter sent by appellant Gould to a key government witness while that witness was in jail, and that the court erred in admitting into evidence prejudicial testimony

---

1. An indictment involving six separate counts was the source of the charges brought against these appellants. All three were found guilty by the jury on Count I, the conspiracy charge. In addition, the jury found Baumgarten guilty of aiding and abetting one Arnold A. Stead in the making of untaxed pipe bombs in violation of 18 U.S.C. § 2 and 26 U.S.C. § 5861(b) on Counts V and VI. Appellant Stanley was found guilty of the same offenses as to Counts IV and VI. The Honorable William H. Becker, Chief Judge, W.D.Mo., imposed sentence as follows: Baumgarten—1 year concurrent on Counts I and V, 2 years probation on Count VI; Gould—5 years and for a study and report under 18 U.S.C. § 4208(b) on Count I; Stanley —2 years probation under 18 U.S.C. § 5010(a) on Counts I, IV and VI.

and exhibits which went beyond the scope of the indictment. In addition, appellant Baumgarten claims that his conviction on each of three counts was not supported by the record and that the court should have granted his motion for a judgment of acquittal. We affirm.

The facts of the case that pertain to the alleged conspiracy and the related charges are significant only with regard to Baumgarten's claim that his convictions were not supported by the record. Accordingly, a recitation of those facts will be reserved until that issue is discussed. However, in order to evaluate appellants' contention that they were denied a speedy trial, a detailed survey of the procedural history of this case must be set forth.

## I.

In July of 1971 appellants (plus Kenneth Sandusky, who was subsequently exonerated of all charges by means of a directed verdict of acquittal) were named in a six-count indictment handed down by a grand jury in the Western District of Missouri. The first count charged all appellants with conspiring with Arnold A. Stead (not here named as a defendant),[2] in violation of 18 U.S.C. § 371, to make destructive devices without paying the tax required by 26 U.S.C. § 5861(f) (1970). The conspiracy count also alleged the transportation of explosives and destructive devices in interstate commerce and the possession of unregistered firearms. This was the only count in which appellant Gould was named. Counts II through VI charged the other appellants, in a variety of combinations with each other and Sandusky, with aiding and abetting Arnold Stead in the making of illegal pipe bombs on five occasions between April 4 and June 29, 1970. Appellants were arraigned on these charges on July 28, 1971 and pled not guilty.

Defense counsel filed a variety of written motions but no requests for a speedy trial in the seven-month period following the arraignment. A hearing on these motions was held on January 11 and 12, 1972. During those proceedings, Gould's attorney requested that the case be set for trial on or after February 28 because of his other commitments. On January 18 the court ordered that the final pretrial conference be held on February 29 with the trial commencing the following day.

On February 24 the government filed a motion for a continuance based upon the fact that Arnold Stead, the key witness for the government, had declared his intention to refuse to testify at the scheduled trial. The motion was granted by the court ex parte. Four days later the government filed a motion to compel Stead's testimony. At the February 29 pretrial conference, counsel for the appellants objected to the continuance. The next day a hearing was held on the motion to compel. The court informed counsel that he would not rule on the motion until Stead had been called, sworn, and had refused to testify. On March 21 appellant Gould moved for an immediate setting of the trial or the dismissal of the case on speedy trial grounds. Two days later this motion was joined by co-defendant Sandusky.

At this point in the proceedings, the focus of the case shifted to Arnold Stead, the maker of the bombs and the chief witness for the prosecution. In late February of 1972, Stead decided, with advice of counsel, to seek suppression of his earlier statements to federal agents on the grounds that he had been coerced. These statements formed the basis of the charges brought against appellants. The legal battle which Stead waged in seeking suppression was not finally lost until August 1972 when this court in an unpublished order dismissed

---

2. Previously, on February 26, 1971, Stead was sentenced to 10 years imprisonment after pleading guilty to a charge of possession of an illegal firearm without registering or paying the tax on it. The sentence was later reduced to 5 years on June 25, 1971. Stead testified for the government in the instant trial.

Stead's appeal from the district court's denial of his motion to suppress.

During this same time period, state criminal charges based on the bombings were brought against Stead in two Kansas counties. In early September 1972 Stead, on advice of counsel, changed his mind and decided to testify for the state and for the United States.[3] Between September and March of 1973 he testified in five state criminal proceedings involving either Gould, Stanley, or Sandusky.

In November 1972 the government was informed of Stead's decision to cooperate and withdrew its motion to compel his testimony. On March 2, 1973, all three appellants filed motions to dismiss the indictment on speedy trial grounds. Those motions were discussed with the court at a conference on March 5, at which time the government announced its immediate readiness for trial. Defense counsel responded by reasserting their speedy trial claim but informed the court that other commitments necessitated that the trial not be set until early April. Subsequently, an evidentiary hearing was held on March 9 regarding the speedy trial motions and other defense motions. The trial commenced on April 16, 1973 and lasted 16 days.

In contending that they were denied a speedy trial, appellants emphasize the length of the delay between the indictment and trial and the fact that the intervening death of a potential alibi witness in December of 1972 severely prejudiced their defense. Appellants contend that these two factors, plus the fact that the delay was solely for the benefit of the government, require that the case be dismissed in compliance with the standards set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We disagree.

■ In Barker the Supreme Court recognized that "a defendant's constitutional right to a speedy trial can only be determined on an ad hoc balancing ba-

sis." Thomas v. United States, 501 F.2d 1169, 1171 (8th Cir. 1974). See also United States v. Cummings, 507 F.2d 324, 330 (8th Cir. 1974); Wallace v. Kern, 499 F.2d 1345, 1349–50 (2d Cir. 1974). Only after consideration of such factors as the length of the delay, the reason for the delay, the defendants' prompt assertion of their speedy trial right, and the prejudice to the defendants caused by the delay can a valid assessment of appellants' claim be made. Barker v. Wingo, supra, 407 U.S. at 531–34, 92 S.Ct. 2182. See also Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).

■ The first factor, the length of the delay, is primarily relevant as a "triggering mechanism" which prompts consideration of the other balancing factors. Barker v. Wingo, supra, 407 U.S. at 530–31, 92 S.Ct. 2182. In a "serious, complex conspiracy" case such as this, as opposed to an "ordinary street crime," a longer delay can be tolerated prior to a finding that the delay was "presumptively prejudicial." Id. at 530, 92 S.Ct. 2182. Nonetheless, in the instant case we find, as the government conceded in its brief, that the 21-month period between the indictment and the trial was sufficient to warrant further inquiry. However, our application of the other Barker factors convinces us that appellants did not suffer prejudice by virtue of this delay and thus, on balance, were not deprived of the right to a speedy trial.

With respect to the reason for the delay, appellants contend that because the delay was solely for the purpose of obtaining the testimony of Arnold Stead as a prosecution witness, this factor should be weighed heavily against the government. See Barker v. Wingo, supra at 531, 92 S.Ct. 2182. Cf. United States v. Marion, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); Arrant v. Wainwright, 468 F.2d 677, 681 (5th Cir. 1972), cert. denied, 410 U.S. 947, 93 S.Ct. 1369, 35 L.Ed.2d 613 (1973); United States v. Golden, 436 F.2d 941, 945–46 (8th Cir.),

---

**3.** Stead pled guilty to the Kansas state charges and received sentences to run concurrently with his federal sentence.

cert. denied, 404 U.S. 910, 92 S.Ct. 236, 30 L.Ed.2d 183 (1971).

■ However, we agree with the government's contention that its efforts to procure Stead's cooperation constituted a valid reason which, under *Barker*, "should serve to justify appropriate delay." 407 U.S. at 531, 92 S.Ct. at 2192. Stead's refusal to testify on the eve of trial after months of preparation can be likened to situations in which courts have found some period of delay justified when caused by a missing witness, United States v. Anderson, 471 F.2d 201 (5th Cir. 1973), or by a physically incapacitated witness, United States v. Robinson, 145 U.S.App.D.C. 46, 447 F.2d 1215, 1219–20 (1971). This was not a last-minute change in the testimony of a key witness. Arrant v. Wainwright, 468 F.2d 677, 680 (5th Cir. 1972), cert. denied, 410 U.S. 947, 93 S.Ct. 1369, 35 L.Ed.2d 613 (1973). Stead consistently maintained that his statements to various government agents and the grand jury were truthful.

Under the particular circumstances of this case, we conclude that the delay of approximately nine months, beginning with Stead's refusal to testify in February and the communication to the government of his decision to testify in November, was justifiable and should not be weighed to the government's disadvantage. Of the remaining 12 months of delay, seven can be attributed to pretrial activity, much of which was initiated by defense counsel. Another month of delay was occasioned by prior commitments of defense counsel, which caused the court to postpone setting the trial until April despite the government's announcement of readiness in early March. Clearly, neither of these "delays" can be weighed against the government. Finally, the four-month period between the time the government learned of Stead's decision to cooperate and the declaration of readiness for trial was spent by Stead and the appellants in state court trials. This reason for delay could be termed a neutral justification at the very least. See Barker v. Wingo, *supra*, 407 U.S. at

531, 92 S.Ct. 2182. We cannot strike the balance against the government on this factor. *See* United States v. Lynch, 163 U.S.App.D.C. 6, 499 F.2d 1011, 1020 (1974).

Similarly, the assertion or non-assertion of the speedy trial right is not a factor that works to the advantage of either side in our balancing process. Two sets of motions for a speedy trial were filed by one or more of the appellants in this case. The first came shortly after Stead announced his refusal to testify. The second set of motions was filed in early March of 1973 and was met by the government's response of readiness for trial. Given these facts, this element of the balancing test gives us very little assistance in determining what, if any, prejudice accrued to these appellants and will be assigned little weight. *See generally* Barker v. Wingo, *supra*, 407 U.S. at 531–32, 92 S.Ct. 2182.

The final and most critical factor to be weighed in the balance is that of actual prejudice to the defendants as a result of the delay. Our assessment of this factor is guided by consideration of three interests which have been identified by the Supreme Court as the primary focus of the speedy trial right:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

407 U.S. at 532, 92 S.Ct. at 2193. Since appellants here were free on bail during the entire pendency of the action, they obviously suffered no prejudicial incarceration. Nor is there any evidence in the record to suggest that their anxiety over the ultimate outcome of the case worked any unusual hardship on appellants. They were also involved in state criminal litigation.

The most serious allegation of prejudice concerns the alleged impairment of the defense caused by the death of a possible alibi witness in December 1972. Appellants contend that the testimony of one Georgene Waddell would have shown that appellant Gould was nowhere

near the site of a bombing which Stead claimed to have committed with Gould's assistance. While this testimony would have specifically aided only Gould, the other appellants claim that they would have been aided inasmuch as the Waddell testimony undermined Stead's credibility. These claims of prejudice appear highly speculative and are not entitled to much weight. *Cf.* Thomas v. United States, 501 F.2d 1169, 1172 (8th Cir. 1974).

The record shows that there is considerable disagreement over what the testimony of Mrs. Georgene Waddell would have been. Kathy Gunderson, appellant Gould's girlfriend, testified at a pretrial hearing that Mrs. Waddell could have specifically identified Gould as the driver of the car that stopped in front of her home at approximately the same time as the bombing took place in which Gould allegedly took part. This testimony was based on a phone interview which Gunderson allegedly conducted with Mrs. Waddell shortly after the indictment of Gould. The actuality of Mrs. Waddell's identification of Gould is contradicted in an affidavit by Mrs. Waddell's son. According to James Waddell, his mother's only recollection of the incident in question was that she heard a car pull up in front of the house, a car door opened, and the car pulled away. Mr. Waddell stated that his mother transmitted this recollection to him shortly after hearing of the indictment against Gould. In view of the conflict in the record, it appears that little or no prejudice has resulted to appellants as a result of Mrs. Waddell's intervening death.

■■ Upon a careful consideration of each of the factors discussed above, we conclude that the appellants were not denied their constitutional right to a speedy trial.[4] Despite the lapse of 21 months between indictment and trial, it is our view that the circumstances in this case are insufficient to strike the balance against the government.

## II.

The next contention is that the evidence was insufficient to support appellant Baumgarten's conviction of conspiracy and the two aiding and abetting counts. In evaluating this claim we are guided by the well-established rule that this court must view the evidence in the light most favorable to the jury's verdict and accept all reasonable inferences that flow from that evidence in support of the verdict. United States v. Wiebold, 507 F.2d 932, 933 (8th Cir. 1974); United States v. Britton, 500 F.2d 1257 (8th Cir. 1974); Koolish v. United States, 340 F.2d 513, 519 (8th Cir.), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965).

As to the conspiracy count, the evidence was that Baumgarten on two separate occasions, after Stead told him that he had committed the Mid-Continent Bank bombing, drove Stead to a gun shop and a Sears store, where Stead purchased gunpowder, pipe, and pipe caps. In addition, Baumgarten aided Stead on the day of the latter's arrest on June 29, 1970 by picking up and delivering to him a drill that was used in the making of a pipe bomb.

■ The government's evidence, direct and circumstantial, as to the existence of the conspiracy in the instant case is ample. We are fully satisfied that the prosecution met its burden of proof on this issue. *See* United States v. Overshon, 494 F.2d 894, 895–96 (8th Cir. 1974). As a result, "even slight evidence connecting a particular defendant to the conspiracy may be substantial and therefore sufficient proof of the defendant's involvement in the scheme." United States v. Overshon, *supra* at 896. *See also* United States v. Hutchinson, 488 F.2d 484, 490 (8th Cir. 1973). Once a member of a conspiracy, an individual is responsible for all overt acts that may be

---

4. Appellants' claim that the delay resulted in the denial of their Fifth Amendment rights is without merit. *See* United States v. Marion, 404 U.S. 307, 325–26, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

or have been done by his co-conspirators in furtherance of the scheme. United States v. Guy, 456 F.2d 1157, 1162 (8th Cir.), cert. denied, 409 U.S. 896, 93 S.Ct. 136, 34 L.Ed.2d 153 (1972). Our review of the evidence against Baumgarten reveals that his connection with the conspiracy was more than slight. His conviction on this count is supported by substantial evidence.

■ On the two aiding and abetting counts the sufficiency of the evidence against Baumgarten is also satisfactory. In order to establish aiding and abetting the government needs to show that the defendant had a "purposeful attitude" and in some manner participated in the unlawful deed. United States v. Hill, 464 F.2d 1287 (8th Cir. 1972); United States v. Kelton, 446 F.2d 669, 671 (8th Cir. 1971); United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938). See also United States v. Atkins, 473 F.2d 308, 310–13 (8th Cir.), cert. denied, 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1973). Essentially, this requires the existence of "some affirmative participation which at least encourages the perpetrator." United States v. Thomas, 469 F.2d 145, 147 (8th Cir. 1972). See also United States v. Wiebold, 507 F.2d 932, 934 (8th Cir. 1974).

■■ The jury in this case could reasonably infer that Baumgarten's actions, such as driving Stead to Sears, accompanying him to the gun shop,[5] and picking up the electric drill for him, constituted sufficient "affirmative participation" and facilitation of the unlawful act for purposes of an aiding and abetting charge. We cannot, as a matter of law, state that the record provides an insufficient basis for Baumgarten's convictions.

### III.

The third issue raised by appellants concerns the admission into evidence of a letter written by appellant Gould to Arnold Stead while Stead was being held as a federal prisoner in the Jackson County Jail in Kansas City. The letter contained some very strong language regarding Gould's feelings of hatred toward police in particular and the governmental system in general. In addition, the letter expressed the writer's desire to see these institutions destroyed by violence. Although the admission of the letter was preceded by the court's admonition to the jury to consider it only with respect to Gould, all three appellants claim to have been prejudiced by its introduction. They claim that it was wrong to admit the letter because it was written after the end of the alleged conspiracy. They also assert that the letter should have been suppressed as the product of an illegal search and seizure. We reject both of these contentions.

■ We do not believe that the date at which the letter was written is of any relevance here. It was not introduced as evidence of the conspiracy. Rather, it must be viewed as an admission by Gould reflecting his motive, state of mind, and friendship toward Stead and their common cause. As such, it was properly admissible regardless of when it was written. See United States v. Dellinger, 472 F.2d 340, 380 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); Isaacs v. United States, 301 F.2d 706, 734 (8th Cir. 1962); Connelly v. United States, 249 F.2d 576, 588 (8th Cir. 1957), cert. denied, 356 U.S. 921, 78 S.Ct. 700, 2 L.Ed.2d 716 (1958); Gulotta v. United States, 113 F.2d 683, 686 (8th Cir. 1940). See generally United States v. Rosenstein, 474 F.2d 705, 713–14 (2d Cir. 1973). The trial court's careful instruction to the jury immediately preceding the reading of the letter by Stead was sufficient to pre-

---

5. The indictment in Count V charged aiding and abetting on or about June 14, 1970. Overt acts alleged in the conspiracy count were that Baumgarten went with Stead to Sears and the gun shop "on June 18, 1970." Proof adduced at trial likewise showed that these trips were made on June 18, 1970. This slight variance is not fatal to Count V, especially in a case like this one in which the performance of the acts, not the exact date, is the significant event. See United States v. Arradondo, 483 F.2d 980, 984 (8th Cir. 1973), cert. denied, 415 U.S. 924, 94 S.Ct. 1428, 39 L.Ed.2d 480 (1974).

vent prejudice to the other defendants.[6] The limited admission of the letter as to Gould was not an abuse of discretion.

■■■ Appellants also contend that the letter should have been suppressed as the product of an illegal search and seizure. Based on Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), they claim that both Gould and Stead had their expectations of privacy violated in contravention of the Fourth Amendment when Warden Simpson read, copied and disseminated the letter to the Kansas City and Lawrence, Kansas Police Departments. We disagree.

The district court, citing In re Bull, 123 F.Supp. 389 (D.Nev.1954), ruled that the reading of the letter by the jailor was permissible if done pursuant to a custom, practice, or regulation that was reasonably related to the maintenance of jail security. Warden Simpson subsequently testified that the jail policy was to screen all incoming mail for the purpose of uncovering contraband, escape plans, and the like. Based on this evidence, the court found that the reading of inmate mail was a reasonable security measure.

Appellants suggest, however, that the Supreme Court's holding in Procunier v. Martinez, *supra*, requires that we reverse the district court's finding that the mail policy was reasonable. It is our view that the applicability of *Martinez* to the facts of this case is extremely limited. The prison mail regulations invalidated in *Martinez* provided for an absolute cut-off of mail to and from prisoners if the correspondence did not satisfy certain vaguely articulated standards. 416 U.S. at 415–19, 94 S.Ct. 1800. In the instant case there is no evidence to suggest that the flow of mail was halted or even impeded by the jail's screening procedure. In our view, the practice of mail scanning employed by the Jackson County Jail satisfied the two-prong test set out in *Martinez*: (a) It is a procedure that furthers "an important or substantial governmental interest unrelated to the suppression of expression" (namely, jail security), and (b) the limit it places on the prisoner's First Amendment rights are "no greater than [are] necessary or essential to the particular governmental interest involved." *Id.* at 413–14, 94 S.Ct. at 1811.

■■■ Having concluded that the procedures pursuant to which the letter from Gould to Stead was initially opened did not violate the constitutional guidelines established in *Martinez*, we must consider the propriety of the "seizure" by copying that was undertaken by Warden Simpson. We hold, as did the district court, that because the scanning of the Gould letter was a valid "entry" in constitutional terms, the "plain view" doctrine came into play to justify Simpson's actions in copying and disseminating the letter to law enforcement officials. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); United States v. Burton, 485 F.2d 715, 717 (8th Cir. 1973). The admission of Gould's letter into evidence was not an abuse of discretion.[7]

**6.** The court instructed the jury as follows:

Ladies and gentlemen of the jury, this letter has been agreed to have been written by Defendant Gould. It has been offered in evidence and it is being received in evidence *only against the Defendant Gould, and is to be considered in respect to Defendant Gould* and is not to be treated by you as evidence in respect to either the Defendants Stanley, Sandusky, or Baumgarten, or any of them.

**7.** The record in this case also reveals that Arnold Stead gave written consent to the opening of his mail by prison authorities. However, we do not choose to validate the Jackson County Jail scanning procedure on a consent basis. The fact that all prisoners had the choice of either signing the consent or not receiving any mail severely diminishes the voluntariness of the act. Further, Gould as sender of the letter did not consent in any way to having his letter read by jail authorities. As the Supreme Court noted in *Martinez*, both the sender and the receiver of prisoner mail are entitled to "protection against unjustified governmental interference with the intended communication." 416 U.S. at 409, 94 S.Ct. at 1809. Thus, we could not have resolved this issue solely on the basis of the validity or invalidity of Stead's consent.

■ Finally, we note that the record is replete with evidence demonstrating the hatred and disrespect held by Gould as well as the other defendants toward the police and government in general. The disputed letter at most was cumulative evidence of defendants' motive and state of mind in this respect. Prejudice has not been shown. United States v. Kirk, 496 F.2d 947, 951 (8th Cir. 1974); United States v. Tompkins, 487 F.2d 146, 152–53 (8th Cir. 1973).

## IV.

The final issue raised by appellants is that the district court committed prejudicial error by admitting into evidence testimony and exhibits that pertained to events occurring outside the scope of the indictment. Specifically, they refer to the admission of evidence regarding the history, development, and goals of the Students for a Democratic Society (S.D.S.) organization and the radical movement in general; the fact that the state of Kansas brought an injunctive action against Gould; and the prior arrest of appellant Gould. In addition, they complain of the admission of a document that Stanley filed with his Selective Service Board in 1970 and an S.D.S. newsletter dated June 17, 1969. We find no error in the admission of any of these items.

■ In the context of a conspiracy trial, the trial court is given great latitude in its determination of the relevancy and admissibility of evidence. United States v. Skillman, 442 F.2d 542, 552 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971); Wangrow v. United States, 399 F.2d 106, 115 (8th Cir.), cert. denied, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968). Our review is limited to an inquiry as to whether the court abused that broad discretionary power. Cotton v. United States, 361 F.2d 673, 676 (8th Cir. 1966).

■ In the instant case the evidence concerning the history and philosophy of the S.D.S. and the overall radical movement was relevant and admissible to show the association of the appellants with one another prior to the date fixed in the indictment, Williamson v. United States, 310 F.2d 192, 199 (9th Cir. 1962), and the intent, purpose, aim, and motives of the parties to the conspiracy, United States v. Cioffi, 493 F.2d 1111, 1115 (2d Cir. 1974); United States v. Cohen, 489 F.2d 945, 949 (2d Cir. 1973); United States v. Del Purgatorio, 411 F.2d 84, 86–87 (2d Cir. 1969); Connelly v. United States, 249 F.2d 576, 588 (8th Cir.), cert. denied, 356 U.S. 921, 78 S.Ct. 700, 2 L.Ed.2d 716 (1958). Similarly admissible was (1) the S.D.S. newsletter containing the reference to a meeting at Sandusky's house attended by appellants Baumgarten and Stanley and (2) the transcript containing the document Stanley submitted to his draft board in which he characterized himself as a "revolutionary" and a "Weatherman." In addition, the Stanley draft document could have been admissible as an admission. See Gulotta v. United States, 113 F.2d 683 (8th Cir. 1940).

■ The evidence concerning an injunctive action brought against Gould by County Attorney Daniel Young prior to the alleged beginning of the conspiracy was admissible to show Gould's motive as it related to his participation in a conspiracy that included the bombing of Young's home by one or more of the conspirators. Arnold Stead testified that Gould had suggested the Young bombing because of Young's role in prosecuting activists. It has long been established that courts have broad latitude in admitting evidence that tends to establish a defendant's motive for committing an offense. Moore v. United States, 150 U.S. 57, 14 S.Ct. 26, 37 L.Ed. 996 (1893); United States v. Johnson, 254 F.2d 175 (2d Cir. 1958).

Finally, appellants claim error in the admission of testimony regarding a prior arrest of appellant Gould. The record reveals that the topic of prior arrests was opened up by defense counsel in an effort to impeach a government witness. The remark concerning Gould's arrest was volunteered by the witness on redi-

rect examination by the government in an attempt to rehabilitate the witness. No objection was made at the time of the remark. A subsequent motion for a mistrial was made by defense counsel in chambers. Although the court overruled the motion, it offered to give an appropriate instruction to remedy the statement. No such instruction was requested.

■ In our view, the passing reference by the witness to a prior arrest was of very little significance in the trial and did not prejudice appellant Gould. Furthermore, even if we were to assume for the sake of argument that the statement was prejudicial, appellants' failure to make a timely objection and to move that the remark be stricken supports a finding of a waiver of the right to object. United States v. Eaton, 485 F.2d 102, 107–08 (10th Cir. 1973). *See generally* Isaacs v. United States, 301 F.2d 706, 734 (8th Cir.), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962).

We affirm the convictions as to each of the appellants.

Affirmed.

BRIGHT, Circuit Judge (dissenting):

I would reverse the convictions in this case on the ground that the prosecution violated appellants' constitutional right to a speedy trial. In my judgment, approximately one year of the 21-month delay from indictment to trial relates to the efforts of the Government to induce the cooperation of their key witness, Arnold Stead, and that delay was unjustified. Furthermore, although the Government had the right to compel Stead's testimony, I would not, in light of the prejudicial effect upon the appellants, place a judicial stamp of approval upon the manner in which the Government obtained Stead's cooperation.

In applying the balancing test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to the circumstances of this case, my concern focuses on the delay from March 1, 1972, the originally scheduled trial date, to April 16, 1973, the date the trial finally commenced.[1]

The Government initiated this delay of more than 13 months after Stead notified it on February 24, 1972, that he did not intend to voluntarily testify for the prosecution but would, instead, claim his fifth amendment privilege against self-incrimination if called to testify.

Stead, characterized in the record as the principal perpetrator of the bombings, was an unindicted co-conspirator in the Government's criminal proceedings against appellants. His testimony was crucial to the prosecution's case. In February 1971 Stead had pleaded guilty in federal district court to a charge of possession of a destructive device and was sentenced to ten years' imprisonment. Stead thereafter gave a statement to federal agents and gave testimony before the grand jury wherein he implicated appellants in the criminal activities for which they were subsequently indicted. Stead's sentence was reduced to five years in June 1971 in return for this cooperation with the Government.

The Government requested an indefinite postponement of the trial one week before it was to begin. This request was prompted by a reversal of Stead's formerly cooperative attitude. Stead's change of heart justified some delay due to its occurrence on the eve of trial. *See* Arrant v. Wainwright, 468 F.2d 677, 680 (5th Cir. 1972), cert. denied, 410 U.S. 947, 93 S.Ct. 1369, 35 L.Ed.2d 613 (1973). However, the fact that the Government had within its power the capability to *compel* Stead to testify[2] but chose in-

---

1. Appellants were indicted in July 1971. The approximately eight-month delay between their indictment and the original date for the trial is adequately justified in the majority opinion.

2. Pursuant to 18 U.S.C. §§ 6001-6003, the Government may request an order of the dis-

trict court requiring an individual to give testimony which he refuses to give by asserting his privilege against self-incrimination.

It is clear that a federal prisoner such as Stead may be granted immunity and compelled to testify about circumstances underlying his conviction. Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960).

stead to embark upon a lengthy campaign to induce his *cooperation* invalidates the Government's rationale for the length of the delay which ensued.

On February 28, the Government filed a motion to compel Stead's testimony. On March 1, the district court deferred its ruling on the motion until Stead had been called, sworn, and had refused to testify. The Government did not pursue its motion either by calling Stead to testify before the court at that time or by requesting that Stead be granted immunity. Instead, according to Stead's uncontradicted testimony, the Government initiated and encouraged other actions against him to procure his cooperation.

The State of Kansas pursued its prosecution of Stead under criminal informations filed on August 6, 1971, and May 1, 1972, alleging his participation in three bombings which occurred in Kansas in 1970. Following an agreement with state and federal authorities that his state sentences would run concurrently with his five-year federal sentence if he testified against the appellants, Stead pleaded guilty to the state charges.[3] Also, Stead testified that he had been assured by the Government that he

would not be prosecuted under a Missouri criminal information (charging him with possession of a pipe bomb) then pending or under any further federal charges arising out of the bombing incidents if he agreed to testify against the appellants in federal court. In early September 1972 Stead agreed to testify against appellants.[4]

Congress has enacted statutes[5] providing government prosecutors with awesome power to compel the testimony of unwilling witnesses, but this power can only be exercised under the guidance and orders of the court under circumstances that assure the witness due process of law. A delay in the trial of appellants to invoke such powers against Stead would have been justified. However, in this case we are asked to approve a lengthy delay in appellants' trial to permit the Government to employ extra-legal coercion to obtain Stead's cooperation. I do not approve such free-wheeling coercion, lacking judicial safeguards. Accordingly, I would weigh the tactics of the prosecution heavily against the Government. Barker v. Wingo, *supra*, 407 U.S. at 531, 92 S.Ct. 2182; *see* Arrant v. Wainwright, *supra*, 468 F.2d at 681.[6]

Also, a recalcitrant witness may be placed in civil contempt under 28 U.S.C. § 1826(a). Further, an unwilling witness may be subject to the imposition or threatened imposition of a criminal contempt sentence. *See* Piemonte v. United States, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961).

3. On August 23, 1972, the state court sentenced Stead to one to five years in prison for the state charges, each to run concurrently. In December 1972 Stead's state sentences were amended to run concurrently with his federal sentence. Stead thereafter testified in several state criminal proceedings against Gould, Sandusky, and Stanley. Gould and Stanley were acquitted in Kansas state court of criminal charges arising out of bombings which occurred in that state.

4. On November 2, 1972, the Government withdrew its motion to compel Stead's testimony. There is conflicting evidence in the record regarding the two-month delay from early September 1972, when Stead decided to cooperate with the Government, to early November, when the Government withdrew its motion to compel Stead's testimony. The majority opin-

ion indicates that the Government was not informed of Stead's decision until early November. On the other hand, Stead testified that the Government participated in his negotiations with state authorities and that government attorneys were present at a meeting in early September when Stead agreed to testify for the Government and the state. Furthermore, Stead was in the custody of the federal government when he was made available as a witness in several state criminal proceedings involving appellants. The majority opinion notes that such proceedings occurred between September 1972 and March 1973.

5. *See* note 2 *supra*.

6. The majority distinguishes Arrant v. Wainwright from the present case by observing that shortly before trial the key witness in *Arrant* changed her testimony, whereas Stead changed his decision to testify as a government witness. This distinction is irrelevant, however, to the holding in *Arrant* that prejudicial delay is not permissible under the sixth amendment when the defendant has requested a speedy trial and the delay is used to "persuade" the key witness to reaffirm her original incriminating statement. 468 F.2d at 683-84.

The majority opinion suggests that the reason for the delay between the time the Government learned of Stead's decision to cooperate and the declaration of readiness for trial was a "neutral justification" because Stead and the appellants were involved in state court trials. I believe that this delay is not a "neutral justification" and should be weighed against the Government for the following reasons:

1) Defendants Gould and Sandusky filed motions with the district court in, which they asserted their right to a speedy trial shortly after the trial was continued.

2) The state criminal proceedings pending against the appellants were not seriously pursued prior to the date appellants' federal trial was originally scheduled. The state prosecutions were renewed after Stead's refusal to testify in federal court and after appellants had asserted their right to a speedy trial in federal court.

3) Stead's testimony in the state proceedings against appellants appears to be part of a coordinated arrangement among state and federal authorities and Stead, which guaranteed Stead reduced and concurrently-running prison sentences.

Finally, I believe that the delay caused by the trial continuance was inherently prejudicial to appellants and that appellants' defense was thereby . impaired. Stead's demeanor and credibility at trial were crucial to both the prosecution and the defense. Persuaded by the Government's extra-legal actions, Stead testified at appellants' trial as a willing and cooperative witness for the prosecution. Had Stead been an unwilling witness forced to testify under legal compulsion, his testimony may have left a different impression upon the jury. Also, the trial record indicates that Stead and other witnesses had occasional losses of memory during their testimony which may be attributable to the delay caused by the postponement of the original trial. Moreover, the death of Georgene Waddell precluded her testimony as an alibi witness for appellant-Gould and as a witness for all of the appellants in their attack on Stead's credibility. The fact that her death occurred during the delay in question accentuates the impairment of appellants' defense.

Accordingly, I would reverse the convictions.