**Melvin George BROWN, Petitioner,**

v.

**Robert F. PARRATT, Warden, Respondent.**

No. CV74–L–191.

United States District Court, D. Nebraska.

Sept. 16, 1975.

Ralph H. Gillan, Asst. Atty. Gen., Lincoln, Neb., for respondent.

## MEMORANDUM OF DECISION

URBOM, Chief Judge.

Melvin George Brown, an inmate at the Nebraska Penal and Correctional Complex, has petitioned this court for a writ of habeas corpus. He was sentenced to imprisonment for ten to twenty years by the District Court of Lancaster County, Nebraska, on April 13, 1972, following his conviction for robbery, with the sentence increased by virtue of the Nebraska Habitual Criminal Act.

The petitioner alleges:

1. That he was denied a speedy trial in violation of the Sixth Amendment to the United States Constitution;

2. That he was denied due process of law because of the introduction of evidence of prior crimes;  and

3. That he was denied his Sixth Amendment right of confrontation.

As to the issue of a speedy trial, a brief chronology is helpful:

| | |
|---|---|
| May 17, 1963 | Robbery of Wally Smith's Gun Shop in Lincoln by Melvin Brown |
| May 27, 1963 | Bank robbery in Canada, hostages taken; Melvin Brown and friend arrested after gun battle and chase down Canadian Highway |
| May 29, 1963 | Melvin Brown pleads guilty to armed robbery and kidnapping in Canadian court and is sentenced to twenty years |
| September 23, 1963 | Complaint filed against Melvin Brown in Lancaster County, Nebraska, for robbery of Wally Smith's store |
| July 15, 1969 | Melvin Brown released from Canadian prison and taken to United States border; Lancaster County officials take him into custody at the border |
| August 13, 1969 | Melvin Brown released on bail |
| March 10, 1971 | Melvin Brown tried and convicted in Lancaster County Court of robbery of Wally Smith's store; sentenced to ten- to twenty-years' imprisonment |

Ralph P. Bassett, Jr., Lincoln, Neb., for petitioner.

The petitioner first asserts a denial of speedy trial solely on the basis of the delay up until his release from the Canadian prison in 1969. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), has set out four factors which are to be weighed on an ad hoc basis in determining whether one's constitutional right to a speedy trial has been violated. It is important to note that all of the factors are to be considered together and no one is either a necessary or sufficient condition. The court noted at 407 U.S. 533, 92 S.Ct. 2193:

> "In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."

The first factor is that of length of delay. *Barker* calls this the triggering mechanism, i. e., a gap so presumptively prejudicial as to require further consideration of the petitioner's claim. The period of five years and ten months here is clearly such a gap.

The second factor is the reason for the delay. In *Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969), the court held that, when a defendant is incarcerated in a federal prison while awaiting trial on another charge in state court, the state has a "constitutional duty to make a diligent, good faith effort" to bring the defendant back to the state for trial during his or her federal incarceration. It specifically overruled the lower court's determination that because the prisoner's release by the federal prison would be an exercise of discretion, that the state thus had no obligation to make such a request. The state had relied upon concepts of power and authority to demand the prisoner's presence as the limits of the state's duty. This case has subsequently been applied to dealings between states as well as between the United States and a state. *Smith* notes at 393 U.S. 382, 89 S.Ct. 579 that where such discretion exists, "the possibility of a refusal is not the equivalent of asking and receiving a rebuff."

This court was not cited to nor has it found any cases involving dealings between a state of the United States and a foreign government. The Supreme Court of Nebraska found in this regard in *State v. Brown*, 192 Neb. 505, 506, 222 N.W.2d 808, 809 (1974):

> "Until the defendant was released by the Canadian authorities, the proceedings in Nebraska were necessarily suspended. Under the Canadian Extradition Act, a fugitive who is serving a Canadian sentence 'shall not be surrendered until after he has been discharged.' Extradition Act, R.S., c. 322 § 24."

In the face of such a statute, the constitutionally required duty of diligence that is imposed on the state to seek a prisoner's release from prison in another state for the purpose of standing trial is necessarily lessened. Here, the Lancaster County Attorney's file was introduced in evidence and it contained a letter from the Canadian Penitentiary Service-Kingston Penitentiary dated December 29, 1964, and addressed to the Sheriff of Lancaster County. The letter states that a copy of the county's letter and "felony warrant" had been forwarded by the Canadian police to them. It further states:

> "This is to advise you that the warrant in question has no validity in this country. I would suggest you contact the [Central District of Immigration] and advise them of your interest in Brown."

The warden also stated that he would advise Lancaster County three months prior to their release of Brown.

It is apparent that the law enforcement authorities of Lancaster County, Nebraska, made an effort to have Brown brought here from Canada for trial but were rebuffed, evidently because of the Canadian Extradition Statute.

It seems to me that this constituted a good faith effort and means that the reason for the delay cannot be held against the state, even though there is no indication that the immigration authorities were contacted.

The third factor of *Barker* is that of "defendant's assertion of the right." This is in the petitioner's favor, because he wrote the Lancaster County Court on February 2, 1966, that he was desirous of a "hasty and speedy trial." There was also a follow-up request in March of that year.

The final factor of *Barker* is prejudice to the defendant. The case of *Morris v. Wyrick*, 516 F.2d 1387 (C.A. 8th Cir. 1975), recognizes that delay can be just as hard on one imprisoned in another jurisdiction as on one not so imprisoned. Cf. *Smith v. Hooey*, supra.

■ There are three interests which the right to a speedy trial was designed to protect. The first of these is stated in *Barker* as preventing oppressive pretrial incarceration. *Morris* holds that prejudice could arise from loss of a chance for a partially concurrent sentence, lost opportunity for parole, and worsened prospects for rehabilitation. The court in *Morris* found that no claims of such adverse effects were there made. Brown has made no such claims either, although the lost chance for a partially concurrent sentence is present. Neither has the petitioner shown any denial of prison privileges or worsened conditions in the Canadian prison as a result of his impending return to Nebraska for trial after his sentence there.

The second interest is that of anxiety and concern of the defendant. Again, Brown has failed to show that, in the words of *Morris*, "the delay weighed particularly heavily on him in specific instances."

The third interest is that of impairment of the defense. Here, the petitioner alleges that Wally Smith's death during his Canadian imprisonment has greatly impaired his defense, since a cross-examination of Smith could have produced evidence which might have cleared Brown. As it was, we have only the hearsay evidence of the treating doctor that Smith told him he was robbed by two men. The case of *United States v. Baumgarten*, 517 F.2d 1020 (C.A. 8th

Cir. 1975), holds that the fact of death of such a witness is not enough in itself and that some sort of showing of how the evidence would have helped the defendant is necessary. In *Baumgarten*, as here, such a showing was highly speculative only.

Upon considering all the factors, this court finds that the petitioner was not denied his Sixth Amendment right to a speedy trial. Despite the long period of delay, we cannot charge Nebraska with the reasons for the delay, and there has been only a nominal showing of prejudice.

■ The petitioner further alleges that he was denied a speedy trial from the time of his return to Nebraska in 1969 up to the time of actual trial here in 1971. The reason for the delay for this last twenty-month period must be assigned to the petitioner. The petitioner's attorney in the May, 1971, trial testified that he was told by Brown to delay the trial as long as possible, apparently so Brown could begin a business in California and make provisions for his family. The attorney carried out these instructions and did perform various dilatory tactics. The petitioner argues that he never gave such an order. This court feels the petitioner is here bound to the acts of his attorney, and we certainly cannot lay the reason for this delay upon the government.

As to the claim of lack of a speedy trial after his return to Nebraska, the factors cannot be struck in the petitioner's favor.

■ The second issue raised by the petitioner is based on the Sixth Amendment right to confrontation. The claim arises out of the trial court's decision to allow Dr. Mabie, the doctor who treated Wally Smith after the robbery, to testify to Smith's statement at the hospital that two men had robbed him. This fact is significant, because Brown alleged that only his friend Cotham took part in the robbery and that he himself was elsewhere. Smith was deceased at the time of trial.

It has been stated many times that confrontation is not a codification of the federal hearsay rules. *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). *Dutton,* which involved the admission of a co-conspirator's declarations, stated that the mission of the confrontation clause was "to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that the trier of facts has a satisfactory basis for evaluating the truth of the prior statement." This satisfactory basis can be found here in the legally presumed trustworthiness of spontaneous declarations that are a part of the res gestae (as the Supreme Court of Nebraska found this declaration to be). The case of *Shaffer v. Field,* 484 F.2d 1196 (C.A. 9th Cir. 1973), dealt with the admission of a dying declaration. The court said at 484 F.2d 1197 that the relevant factual inquiry is whether, "under the circumstances, the unavailability of the declarant for cross-examination deprived the jury of a satisfactory basis for evaluating the truth of the extrajudicial declaration," citing *United States v. Adams,* 446 F.2d 681, 683 (C.A. 9th Cir. 1971). In this regard, the court went on to say:

> "The trustworthiness of spontaneous statements is established on grounds distinct from the general credibility of the declarant. The declarant's unavailability did not deprive the jury of a basis for evaluating the truth of the declarations."

Thus, this court holds that the petitioner's right to confrontation was not violated by the introduction of the hearsay statement here.

The petitioner's third claim is that his Fourteenth Amendment rights to due process were violated by the introduction of evidence of prior crimes. The evidence introduced was the testimony of three Canadian police officers who had pursued and arrested Brown following the bank robbery in Canada. The relevancy of the testimony was that goods stolen from Wally Smith's store were found in the car.

It is a general rule that state evidentiary questions are not subject to habeas corpus review "unless there is an error of such magnitude as to deny fundamental fairness to the trial proceedings." *United States ex rel. Harris v. Illinois,* 457 F.2d 191, 198 (C.A. 7th Cir. 1972), commenting on *United States v. Pate,* 426 F.2d 1083 (C.A. 7th Cir. 1970). The standard enunciated in *Pate* was when "the probative value of such evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then the use of such evidence by a state may rise to the posture of the denial of fundamental fairness and due process of law." 426 F.2d at 1086.

The relevancy here is strong—discovery of the stolen goods on the defendant. The possibly prejudicial effect is also strong—pictures of shot-up police cars. However, the possibly prejudicial effect of such evidence does not so outweigh the probative value as to result in a denial of due process.